UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LORI A. STEVENS,

    Plaintiff,

  v.                                       Case No. 21-CV-270-SCD

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

    Lori A. Stevens applied for social security disability benefits based on radiating neck and back pain. After a hearing, an administrative law judge denied Stevens' claim, finding she could still perform her past job as an assistant teacher, as well as other jobs that didn't require heavy lifting. Stevens seeks judicial review of that decision, arguing that the ALJ erred evaluating the prior administrative medical findings of the Social Security Administration's medical consultants and her subjective statements concerning her impairments. Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, contends that the ALJ did not commit reversible error in denying Stevens' claims and that substantial evidence supports his decision. I agree with Stevens: the ALJ committed reversible error in evaluating the medical consultants' findings. Accordingly, I will reverse the decision denying Stevens disability benefits and remand the matter for further proceedings.

## BACKGROUND

    On February 27, 2021, Stevens filed this action seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability benefits

under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. United States District Judge J.P. Stadtmueller reassigned the matter to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 5, 6. Stevens filed a brief in support of her disability claim, ECF No. 19; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 24; and Stevens filed a reply brief, ECF No. 27.

I.  **Medical Background**

Stevens was born in 1965. *See* R. 163.[1] After graduating high school, she worked for years as an assistant teacher in early childhood education and day care programs. *See* R. 39–43, 171–75, 178–79, 184–85. Stevens developed pain in her neck and back following a car accident, several falls, various work injuries, and general wear and tear. R. 264. The pain persisted despite therapy, injections, and medications, so in December 2017, Stevens underwent fusion surgery at C4-5, C5-6, and C6-7 levels. *See* R. 43, 66, 68–70, 79, 82, 264, 268–71, 300–01, 309, 316, 320–21, 326, 340. She initially demonstrated good improvement in her pain post-surgery, R. 300, but by December 2018 the pain had returned, along with radiation down her left arm, R. 284. Stevens' primary care provider diagnosed C8 radiculopathy and prescribed an anti-inflammatory gel and a pain patch. R. 287.

Throughout 2019, Stevens continued to complain about pain and numbness in her neck and left arm. For example, in May 2019, Stevens told her provider that her pain had returned "about a month ago." R. 300. She reported numbness and tingling in her left arm and hand and indicated sitting, bending, standing, walking, and lying down aggravated her pain. During the physical examination, Stevens exhibited pain with palpation of the bilateral cervical paraspinals and left trapezius muscle, decreased range of motion of the cervical spine,

---

[1] The transcript is filed on the docket at ECF No. 13-2 to ECF No. 13-9.

normal and symmetrical motor strength of the bilateral upper extremities, and a steady gait. R. 303. The provider ordered an updated MRI and prescribed a muscle relaxer.

Stevens underwent the MRI on May 15, 2019. *See* R. 268–73. The MRI revealed "evidence of interval surgery with anterior interbody fusion at the C4-5, C5-6 and C6-7 levels"; "rather marked left neural foraminal narrowing at each of [those] levels as well as marked right neural foraminal narrowing at C5-6"; "mild diffuse disc bulging" at C3-4 "but without encroachment upon the cord and without significant neural foraminal narrowing"; and "diffuse disc bulging" at C7-T1, with "no evidence of cord encroachment" and "rather marked left neural foraminal narrowing at this level but the right neural foramen is widely patent." R. 269. The examiner summarized those findings:

> 1. Interval anterior interbody fusion at the C4-5, C5-6 and C6-7 levels. There is no significant spinal stenosis but there is neural foraminal narrowing at these levels as discussed above.
>
> 2. Disc bulging at the C7-T1 level with marked left neural foraminal narrowing but no cord encroachment.
>
> 3. Mild disc bulging at C3-4 without evidence of encroachment on neural structures.

R. 268. Upon reviewing the results of the MRI, Stevens' provider recommended a left C7-T1 epidural steroid injection. R. 300.

Stevens received the injection on June 13, 2019. *See* R. 320. At a follow-up visit the next month, Stevens reported "80% improvement of her pain." R. 316. She rated her pain level at a two out of ten, though she did complain about occasional numbness in her left arm. On exam, Stevens exhibited no tenderness to palpation, full range of motion, and normal motor strength. R. 319.

3

Stevens' improvement didn't last. In January 2020, she complained about a recurrence of neck and hand pain, and her provider referred her back to the pain management clinic. *See* R. 352–55. Stevens received another epidural steroid injection in April 2020. R. 406–10. In June 2020, she underwent another MRI of her cervical spine. *See* R. 413–14. The MRI revealed "moderate" foraminal narrowing at C4-5; "mild to moderate" spinal stenosis at C5-6; "moderate" foraminal narrowing at C6-7; and, at C7-T1, "widely patent" neural foramen, no spinal stenosis or significant facet changes, and unchanged disc bulges and fatty tumor compared to the 2019 MRI. R. 413. The summarized findings included:

1. Stable anterior cervical fusion spanning C4-C7 with cage placement and anterior plate. The hardware appears intact

2. Stable multilevel foraminal narrowing with moderate left C5, moderate bilateral C6, and moderate left C7 foraminal narrowing appreciated

3. 3 cm lipoma of the right posterior neck, stable in appearance

4. Minimal mucosal thickening of the floor the right sphenoid sinus

R. 413–14.

## II. Administrative Background

In May 2019, Stevens applied for disability insurance benefits, alleging that she became disabled on May 23, 2019. R. 13, 163–64. She listed several medical conditions on her disability application: arthritis, depression, pinched nerve, sciatica, high blood pressure, shoulder pain, hypothyroidism, and anxiety. R. 183. Stevens asserted that she stopped working in May 2019 after the daycare program where she worked was discontinued. *See* R. 183–85.

In June 2019, Stevens completed a function report in support of her disability application. *See* R. 191–99. She claimed that she had excruciating pain running from the top

of her spine down through her shoulders and arms that caused difficulty sitting, standing, lifting, and carrying. R. 191. Stevens estimated that without a break she could sit for fifteen to twenty minutes, stand for fifteen to twenty minutes, and walk for fifteen minutes. R. 199. Stevens further estimated that, over the course of the workday, she could sit for three to four hours, stand for two to three hours, and walk for one to two hours. As for her daily activities, Stevens reported that she took care of her husband and grandchildren by cooking for them and keeping the house clean. R. 192. Stevens also reported that she had no problems with personal care; she cooked complete meals, with several courses, three times a day; she cleaned, struggled to do laundry, and ironed each day; her husband took care of the yard work; she couldn't drive, so she got around using public transportation or riding with others; she shopped once or twice a week; she was able to manage her money; she liked watching television, playing games, and interacting with her grandchildren (though her pain often got in the way); and she visited with family weekly. R. 192–96.

Stevens filled out another function report in October 2019. *See* R. 211–18. She indicated that she couldn't stand for long periods of time due to lower back and hip pain; she couldn't lift anything over twenty pounds; she couldn't walk for long lengths; the nerve damage to her spine had started affecting her right arm; and she had resumed receiving pain injections. R. 211. Stevens' reported activities were similar to the ones she documented on the previous function report: she cared for her grandchildren while her daughter was at work, she did the cooking and some light housework, and she became more of a "homebody" because she tired easily. *See* R. 212–17.

5

### A. State-agency review

The Social Security Commissioner denied Stevens' application at the state-agency level of review. *See* R. 63–85. Patrick Belson, DO, reviewed the medical record initially, and Stephanie Green, MD, reviewed the record upon Stevens' request for reconsideration. Both reviewing physicians acknowledged the 2017 cervical fusion surgery and the May 2019 MRI showing neural foraminal narrowing and mild disc bulging. R. 69, 79. Nevertheless, according to the reviewing physicians, the medical records suggested that Stevens retained the capacity for work at the light exertional level with no other limitations. R. 68–70, 82–83. After the Commissioner denied her application at the state-agency level, Stevens requested an administrative hearing before an ALJ. R. 108.

### B. Administrative hearing

On June 5, 2020, ALJ Wayne Ritter held an evidentiary hearing on Stevens' disability application. *See* R. 27–62. Stevens testified at the hearing. *See* R. 38–55. She told the ALJ that she worked for many years as an assistant early childhood education teacher. However, she was laid off in May 2019 after upper management terminated the before- and after-school program where she worked. At the time of the hearing, Stevens was living in a house with her husband, daughter, and two grandchildren (ages six and ten). She took care of her grandchildren while her daughter was at work during the day but explained that her daughter and grandchildren would soon be moving out.

Stevens told the ALJ that she didn't think she could work anymore due to pain in her neck and lower back and tingling and numbness in her left arm and hip. She acknowledged that her neck pain initially subsided following cervical fusion surgery in 2017, but according to Stevens, the pain returned about a year later, along with the radiating symptoms. She stated

6

that she treated her symptoms with injections, physical therapy, a muscle relaxer, and over-the-counter pain medications.

Stevens also explained how her symptoms impacted her functioning and her daily activities. She indicated that she could sit for twenty minutes before she needed to get up and move around, she could stand for ten to fifteen minutes before her legs got numb and tingly, and she could lift at most fifteen or twenty pounds. Stevens also indicated that she tired easily, got sore, and took frequent breaks while performing basic housework. She did, however, enjoy doing crosswords puzzles, watching television, and playing games.

The ALJ also heard testimony from a vocational expert. *See* R. 55–61. The vocational expert testified that a hypothetical person with Stevens' age (fifty-four years old at the time of the hearing), education (a high school graduate), and work experience (as a teacher aide II) could perform the teacher aide job as generally performed (though not as Stevens performed it) if she was limited to light work. According to the vocational expert, that person could also work as a mail clerk (clerical), a storage facility rental clerk, and a sales attendant (retail trade). The vocational expert indicated that no jobs would be available if the person also was absent more than one day per month or required unscheduled breaks during the workday.

C.   ALJ's decision

Applying the standard five-step analysis, *see* 20 C.F.R. § 404.1520(a)(4), on July 1, 2020, the ALJ issued a written decision finding that Stevens was not disabled, *see* R. 10–26. The ALJ determined that Stevens met the insured status requirements of the Social Security Act through December 31, 2023. R. 15. At step one, the ALJ determined that Stevens had not engaged in substantial gainful activity since her alleged onset date. R. 16. The ALJ determined at step two that Stevens had one severe impairment: disorders of the spine, status post C4-7

fusion, with left upper extremity radiculopathy. R. 16. At step three, the ALJ determined that Stevens did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 16–17.

The ALJ next assessed Stevens's residual functional capacity—that is, her maximum capabilities despite her limitations, *see* 20 C.F.R. § 404.1545(a). The ALJ found that Stevens had the RFC to perform the full range of light work.[2] R. 17. In assessing that RFC, the ALJ considered Stevens' subjective allegations, the medical evidence, and the medical opinion evidence and prior administrative findings. *See* R. 17–19.

The ALJ first addressed Stevens' subjective allegations about her impairments. He began by noting that, consistent with social security regulations and rulings, he considered "all symptoms and the extent to which [those] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." R. 17 (citing 20 C.F.R. § 404.1529; Social Security Ruling 16-3p). The ALJ then summarized the allegations contained in Stevens' disability report, function reports, and hearing testimony. R. 17 (citing Exhibits 2E [R. 182–90]; 3E [R. 191–200]; 6E [R. 211–18]; Hearing Record [R. 34–62]). Based on his consideration of the evidence, the ALJ determined that the intensity, persistence, and limiting effects of Stevens' alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 17–18.

Next, the ALJ discussed the medical evidence in the record. The ALJ noted that Stevens had a disorder of the cervical spine for which she underwent a C4-7 cervical fusion

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

in 2017. R. 18 (citing Exhibits 3F [R. 268–73]; 4F [R. 274–95]; 5F [R. 296–308]; 6F [R. 309–12]; 7F [R. 313–25]; 8F [R. 326–46]; 10F [R. 357–87]; 12F [R. 389–411]; 13F [R. 412–22]). The ALJ also noted that Stevens complained about pain and numbness in her left arm after the cervical fusion and that providers ultimately diagnosed left upper extremity radiculopathy. Finally, the ALJ noted that, upon examination, Stevens exhibited pain with palpation of the bilateral cervical paraspinals and left trapezius muscle, decreased range of motion of the cervical spine, normal and symmetrical motor strength in the bilateral upper extremities, and a steady gait. R. 18 (citing Exhibit 5F [R. 296–308]).

The ALJ discussed other medical records post-dating Stevens' alleged onset of disability. For example, the ALJ summarized the results of the May 2019 cervical spine MRI:

> Magnetic resonance imaging (MRI) of the cervical spine from May 2019 revealed interval anterior interbody fusion at the C4-5, C5-6 and C6-7 levels; no significant spinal stenosis but there is neural foraminal narrowing at these levels; disc bulging at the C07-T1 level with marked left neural foraminal narrowing but no cord encroachment; and mild disc bulging at C3-4 without evidence of encroachment on neural structures.

R. 18 (citing Exhibit 3F [R. 268–73]). The ALJ also cited records purportedly showing some improvement in symptoms following steroid injections in 2019. R. 18 (citing Exhibits 1F [R. 259–64]; 4F [R. 274–95]; 5F [R. 296–308]; 7F [R. 313–25]; 10F [R. 357–87]; 12F [R. 389–411]). The ALJ specifically mentioned a treatment note from July 2019 wherein Stevens reported eighty percent improvement of her neck and left arm pain after an injection in May 2019. R. 18 (citing Exhibit 7F [R. 313–25]). Finally, the ALJ summarized the results of the most recent MRI:

> She underwent another MRI of the spine in June 2020 which revealed stable anterior cervical fusion spanning C4-C7 with cage placement and anterior plate (hardware appeared intact); stable multilevel foraminal narrowing with moderate left C5, moderate bilateral C6, and moderate left C7 foramina[l] narrowing appreciated; a three centimeter lipoma of the right posterior neck,

9

> stable in appearance; and minimal mucosal thickening of the floor the right sphenoid sinus[.]

R. 18 (citing Exhibit 13F [R. 412–22]).

The ALJ determined that, while Stevens "clearly suffer[ed] from a severe spinal impairment, the record fail[ed] to fully substantiate [her] allegations of *disabling* symptoms." R. 18. The ALJ provided three reasons to support that finding. First, according to the ALJ, "records show[ed] that [Stevens] reported improvement in her pain with steroid injections." R. 18 (citing Exhibit 7F [R. 313–25]). Second, the ALJ noted that "[r]ecent diagnostic imaging ha[d] shown fairly stable impressions of [Stevens'] neck impairment, rather than any progression of the condition." R. 18 (citing Exhibit 13F [R. 412–22]). Third, the ALJ indicated that Stevens "reported and testified to various activities of daily living which show[ed] fairly good functioning, including caring for her husband and two small grandchildren, cooking, shopping, and household cleaning." R. 18 (citing Exhibits 3E [R. 191–200]; 6E [R. 211–18]; Hearing Record [R. 34–62]).

Finally, the ALJ assessed the prior administrative findings of the state-agency reviewing physicians (that is, the only opinion evidence in the record). The ALJ determined that those findings—that Stevens was capable of the full range of light work—were persuasive because they were "generally consistent with the overall record." R. 19. The ALJ based that conclusion on the "relatively minimal" diagnostic imaging and clinical findings, Stevens' reported improvement in her pain symptoms with injections, and Stevens' activities of daily living. R. 19 (citing Exhibits 1F [R. 259–64]; 3F [R. 268–73]; 4F [R. 274–95]; 5F [R. 296–308]; 6F [R. 309–12]; 7F [R. 313–25]; 8F [R. 326–46]; 10F [R. 357–87]; 12F [R. 389–411]; 13F [R. 412–22]; Hearing Record [R. 34–62]).

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Stevens could perform her past job as a teacher aide II, as that job generally is performed. R. 19–20. The ALJ alternatively determined at step five that there were jobs that existed in significant numbers in the national economy that Stevens could perform. R. 20–21. Relying on the vocational expert's testimony, the ALJ mentioned three examples: mail clerk (clerical), storage facility rental clerk, and sales attendant (retail trade). Based on those findings, the ALJ determined that Stevens was not disabled from her alleged onset date through the date of the decision. R. 21.

The Social Security Administration's Appeals Council denied Stevens' request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner of the SSA, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse a Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the

11

record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Stevens takes issue with the ALJ's conclusion that Stevens could perform the full range of light work. Her main argument is that the ALJ erred in assessing the prior administrative medical findings of the state-agency reviewing physicians.

Social security regulations require ALJs to consider all prior administrative medical findings in the record. *See* 20 C.F.R. § 404.1520c. "A prior administrative medical finding is a finding, other than the ultimate determination about whether [the claimant is] disabled, about a medical issue made by [the Social Security Administration's] Federal and State agency medical . . . consultants." 20 C.F.R. § 404.1513(a)(5); *see also* 20 C.F.R. § 404.1513a. As such, the RFC findings at the initial and reconsideration levels of state-agency review constitute prior administrative medical findings that ALJs must evaluate. 20 C.F.R. § 404.1513(a)(5)(iv).

Because Stevens filed her application on or after March 27, 2017, the new social security regulations regarding the evaluation of prior administrative medical findings applied to her case. *See* § 404.1520c. Under the new regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any . . . prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must consider the

persuasiveness of all prior administrative medical findings in the record using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c(c). Although an ALJ may consider all five factors, "the most important factors" are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The supportability factor focuses on what the source brought forth to support his or her findings: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor, on the other hand, compares the source's findings to evidence from other sources: "[t]he more consistent a . . . prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the . . . prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ must explain in his decision how he considered the supportability and consistency factors for each prior administrative medical finding in the record. § 404.1520c(b)(2).

Stevens argues that the ALJ committed reversible legal error by failing to consider the supportability of the reviewing physicians' findings and that substantial evidence does not support the ALJ's assessment of the consistency factor.

I. **Supportability**

The ALJ found the state-agency reviewing physicians' findings persuasive because "they [were] generally consistent with the overall record," but he did not address the supportability of those findings. R. 19. Kijakazi argues that, while the ALJ did not use the word "supportability" in his decision, it is clear he found the reviewing physicians' findings supported by the objective evidence and their explanations. Kijakazi notes that Dr. Belson

13

(the reviewing physician at the initial level of review) cited Stevens' past fusion surgery, the results of the May 2019 cervical MRI, and Stevens' reported activities as support for his findings. ECF No. 24 at 11 (citing R. 68–70). Likewise, Kijakazi notes that Dr. Green (the physician who reviewed the record upon Stevens' request for reconsideration) explicitly considered the May 2019 MRI and Stevens' reported improvement following an epidural steroid injection. ECF No. 24 at 12 (citing R. 79). The ALJ's decision, however, did not mention the objective evidence or supporting explanations presented by the reviewing physicians. Nor did the ALJ explain how he considered the evidence or explanations in relation to the persuasiveness of their findings, as required by § 404.1520c(b)(2). The failure to address the supportability of a prior administrative medical finding constitutes legal error. *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (remanding where ALJ failed to consider the consistency factor when evaluating a medical opinion); *see also Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, 2021 U.S. Dist. LEXIS 186850, at *11–14 (E.D. Mo. Sept. 29, 2021) (same but the supportability factor).

The Seventh Circuit has repeatedly held that administrative error like the one here is subject to harmless-error review and that remand is not required if the reviewing court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707–08 (7th Cir. 2013) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003)). "[T]he harmless error standard is not . . . an exercise in rationalizing the ALJ's decision and substituting [the reviewing court's] own hypothetical explanations for the ALJ's inadequate articulation." *McKinzey*, 641 F.3d at 892. Rather, the question for a reviewing court "is now prospective—

14

can [I] say with great confidence what the ALJ would do on remand—rather than retrospective." *Id.*

I cannot say with great confidence that the ALJ would reach the same result about the persuasiveness of the reviewing physicians' findings on remand. In evaluating the supportability of a prior administrative finding, an ALJ may consider (among other things) whether the source examined the claimant, whether the source's finding stems from a checklist, whether the source provided a detailed explanation for his or her finding, and whether the source failed to consider certain evidence. *See Starman*, 2021 U.S. Dist. LEXIS 186850, at *11–12 (listing cases). The reviewing physicians here did not examine Stevens, they largely presented their findings in checklist format, and they provided very brief explanations for their findings. *See* R. 68–70, 82–83.

Moreover, it's unclear whether the evidence cited by the reviewing physicians supported their findings. The reviewing physicians noted Stevens' prior surgery, improvement with treatment, and daily activities. *See* R. 68–70, 79. That evidence, however, is irrelevant to the supportability of their findings, as the supportability factor is limited to *objective* medical evidence. *See* § 404.1520c(c)(1); *see also* 20 C.F.R. § 404.1513(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both."). The May 2019 MRI qualifies as objective medical evidence. But the reviewing physicians did not fully describe the results of that exam. Dr. Green noted that the MRI revealed left neural foraminal narrowing, but he did not describe the degree of narrowing or at what levels it occurred. *See* R. 79. Dr. Belson noted that the MRI revealed "marked" left neural foraminal narrowing at C7-T1. R. 70. However, the MRI also revealed "rather marked" left neural foraminal narrowing at C4-5 and C6-7 and "marked" bilateral neural foraminal narrowing at C5-6. R. 269. Kijakazi does not point to

15

Case 1:21-cv-00270-SCD   Filed 04/04/22   Page 15 of 19   Document 28

any other objective medical evidence that purportedly supported the reviewing physicians' findings.

## II. Consistency

Both state-agency reviewing physicians found that Stevens was capable of the full range of light work. The ALJ found those findings persuasive because they were "generally consistent" with the "relatively minimal" diagnostic imaging and clinical findings, Stevens' reported improvement in her pain symptoms with injections, and Stevens' testimony regarding her activities of daily living. R. 19. Substantial evidence does not support that assessment.

*First*, the record does not support the ALJ's handling of the diagnostic imaging findings. The ALJ characterized the diagnostic imaging findings as "relatively minimal" even though, as the ALJ noted, the May 2019 cervical MRI revealed "marked" left neural foraminal narrowing at C7-T1. R. 18–19 (citing Exhibit 3F [R. 268–73]). The ALJ also overlooked or ignored other findings from the May 2019 MRI showing "rather marked" left neural foraminal narrowing at C4-5, C5-6, and C6-7 and "marked" right neural foraminal narrowing at C5-6. R. 269. The ALJ's decision recited only the summary findings of the MRI, which did not describe the degree of narrowing at those levels. *See* R. 18 (citing Exhibit 3F [R. 268–73]). In addition to misunderstanding or mischaracterizing the results of the May 2019 MRI, the ALJ failed to explain how the reviewing physicians' finding that Stevens could perform light work was consistent with the MRI findings. *See Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) ("The ALJ should have, but did not, explain why [the treating source's] opinion about the severity of [the claimant's] pain is inconsistent with [the MRI] findings.").

16

Case 1:21-cv-00270-SCD   Filed 04/04/22   Page 16 of 19   Document 28

*Second*, the record does not support the ALJ's conclusion that Stevens' symptoms improved with treatment. The ALJ accurately noted that Stevens reported eighty percent improvement in her pain symptoms following an epidural steroid injection in June 2019. R. 19 (citing Exhibit 7F [R. 313–25]). However, the ALJ overlooked or ignored later evidence showing that Stevens' neck pain returned several months later. *See* R. 352–55. Her provider referred her back to the pain management clinic in January 2020, R. 354, she received another epidural steroid injection in April 2020, R. 406–10, and she had another MRI in June 2020, R. 412–14. The ALJ therefore impermissibly cherry-picked a single treatment note from the record to imply that Stevens' pain symptoms improved with treatment when, in fact, the record shows that improvement to be fleeting. The ALJ also failed to explain how the reviewing physicians' finding that Stevens could perform light work was consistent with her temporary improvement in summer 2019.

*Finally*, the record does not support the ALJ's reliance on Stevens' reported activities. The ALJ indicated that Stevens' testimony showed she was "able to complete most daily tasks despite her condition." R. 19 (citing Hearing Record [R. 34–62]). Earlier in the decision, the ALJ noted that Stevens stated she took care of her husband and grandchildren. *See* R. 17. However, the ALJ did not consider what Stevens did for her husband and grandchildren other than to cook for them and keep the house clean, *see* R. 192. *See Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017) (finding that ALJ erred in relying on the claimant's purported ability to care for her cousin and her friend's young children without considering exactly what she did for them). Also, the ALJ appears to have overlooked the age of Stevens' grandchildren and the likely care they required. Stevens' grandchildren were six and ten at the time of the administrative hearing, *see* R. 47, and they were in school at the time Stevens filled out her

17

function report, *see* R. 213. Thus, they likely did not need to be picked up or carried; nor did they likely require their grandmother's constant attention. The ALJ also failed to consider that Stevens reported having difficulty keeping up with her grandchildren, *see* R. 50 (stating that she took them on walks but couldn't go far due to her pain), 195 ("cannot interact with the children as easily or as much if at all"), and that Stevens testified that her grandchildren would be moving away within a month of the hearing, R. 47–48. The ALJ listed Stevens' other daily activities earlier in his decision—household cleaning, cooking, shopping, managing her own money, doing crossword puzzles, and playing games, R. 17—but he did not explain how those activities were consistent with full-time light work, the finding made by the reviewing physicians. *See Clifford*, 227 F.3d at 870 (finding that ALJ erred in not explaining how the claimant's activities were inconsistent with his treating doctor's opinion). Nor is the consistency obvious. *Leverance v. Astrue,* No. 09-C-559, 2010 WL 3386508, at *4 (E.D. Wis. Aug. 25, 2010) ("[H]er limited activities are exactly the sorts of pursuits one would expect someone who is disabled to engage in. In other words, the fact that her activities were so minimal supports rather than undermines the conclusion that Plaintiff is disabled.")

\* \* \*

Overall, the persuasiveness of the prior administrative medical findings was crucial to the ALJ's decision. The medical record was sparse; the ALJ's RFC assessment—the full range of light work—tracked the state-agency reviewing physicians' findings exactly; and, based on her age, Stevens would be disabled if found capable of only sedentary work. Because the ALJ did not address the supportability of the reviewing physicians' findings and because substantial evidence does not support the consistency of those findings with other evidence, remand is required.

18

## CONCLUSION

For all the foregoing reasons, I find that the ALJ committed reversible error in evaluating the persuasiveness of the state-agency reviewing physicians' prior administrative medical findings. Thus, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. On remand, the Commissioner should also address Stevens' other claimed error regarding her subjective allegations about her impairments. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 4th day of April, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge